You may proceed when you're ready. Thank you, Your Honor. Good morning. May it please the Court. David Ushami of the American Freedom Law Center, representing Dr. Colleen Huber. If I may, Your Honor, I'd like to reserve three minutes for rebuttal. All right. In 1860, there was a hotly discussed and debated issue regarding slavery that ultimately resulted in the Civil War. At that time, a great American orator and a former slave, Frederick Douglass, announced in a speech entitled A Plea for Free Speech in Boston that, quote, liberty is meaningless where the right to utter one's thoughts and opinions has ceased to exist. While those times were arguably more contentious than our times today, the fundamental question in this case is how far may the federal government or any government entity go in utilizing the social media platforms to censor speech that the government does not like? Viewpoint discrimination. The reality, however, is that this particular appeal really boils down to whether or not the standards articulated by the Supreme Court and Kumbli and Iqbal actually mean something objectively. We all know the standards. May I ask you if we can just confirm what you do not allege? It appears that you do not allege that Twitter's terms of service for COVID misinformation policy were created as a result of Twitter's conspiracy with the government. Is that right? That would be correct, Your Honor. Okay. You don't allege that the appellant did not violate those policies, correct? Yes, we do, Your Honor. Oh, you do? You don't think that she violated? Which policy did she not violate? And where is that in your complaint? I have the complaint in front of me, so why don't you point out where you make that allegation, please? Okay, let me be a little bit more nuanced in that response. I might have been a bit too quick. And the answer to that question is the use of the terms of service were not violated by any fact in the record. That is to say, there is no factual record that our client stated something that was factually not true, that violated some government policy, or that wasn't authoritative or valid COVID speech. That's not in the record. We're at a motion to dismiss in which we alleged in the complaint. And actually, we addressed this in our reply brief. Well, okay, this is a motion to dismiss. So this is based on the four corners of the complaint. And just point me to the paragraph where there's an allegation that the appellant did not violate any of Twitter's policies. I didn't see that, but perhaps I could have missed it. And if I did, I apologize. But why don't you point me to the paragraph that alleges that there was no violation by the appellant of Twitter's policies. And I'll keep going, you can point me to the paragraph. I don't see an allegation that Twitter would not have suspended the appellant's account absent the conspiracy between Twitter and the government. I don't see an allegation that the federal officials instructed Twitter or agreed with Twitter about exactly what to do about particular accounts, including the appellants. And if I'm I did not see those allegations in the complaint. Your Honor, specifically, again, there is nothing factual on the record other than the allegation that Twitter engaged in a conspiracy and that conspiracy was the cause of its decision to terminate our client's account. There's nothing on the record to suggest in our allegations that Twitter utilized the terms of service and not the conspiracy. They certainly use that as a pretext, but that's not an allegation in our complaint. The problem, counsel, and you mentioned Twombly and Iqbal, and those cases have to mean something. And so, as I understand that case law, you need more than just conclusory allegations of a to the bones because I just see bald allegations of a conspiracy between the government and Twitter, a private entity. And so, it's really two sides of the coin following up on Judge Cole's questions. Not only are the allegations in the complaint really bare bones, but there's no allegations that Twitter didn't just simply enforce its terms of service. With all due respect, Your Honor, I would disagree. They're related. They're related, right? So, the missing allegations really highlight the conclusory nature of the allegations that are there in the complaint. Well, let's talk about the allegations. With all due respect, I would disagree that, in fact, I would argue, and I think the facts would argue, that this is a very plausible claim of conspiracy to begin with, and this answers Judge Cole's question. The article that's cited as an allegation states very clearly that the Biden administration did not consider what Twitter had done up until that time sufficient for its wartime effort to censor anti-COVID vaccination speech. That allegation in and of itself would certainly lead to the reasonable inference that Twitter had not, in fact, terminated Dr. Huber's account until after the conspiracy, even though they had the terms of service to do so. They didn't do it on their own behalf. They didn't do it for their own business reasons. Can I ask you another question? In your opening brief, you concede that the Biden administration was unaware and even uninvolved in the particulars of Twitter censorship. That's on page 33. And on page 14, the summary of the argument, it says the purpose and effect of this conspiracy is to censor speech critical of COVID-19 vaccines on behalf of the government and to promote a governmental objective and policy. So I guess, you know, how are those specific enough to meet the requirements for state action? Under Tsao and Fonda v. Gray, this court has made clear that the joint action theory can be is clear. We did not concede that the Biden administration was not involved in this conspiracy. That's clear from the allegation that they were involved. It's clear that they told Twitter not only what to censor, they told them how to censor it, and they even told them how to do it. So you're saying that they actually told them what to do about particular accounts, that they told them to suspend accounts? No, Your Honor. I'm not saying that. And in fact, that's not required under conspiracy law. State action conspiracy only requires a conspiracy. Conspiracy law is clear that conspiracy is satisfied when there is a meeting of the minds to engage in some criminal, ultimate, illicit behavior. And in this case, to violate the First Amendment, to censor speech that the government itself could not censor. At that point, once that conspiracy is reached, if the co-conspirators go out and engage in behavior, and as we pointed out in our brief, if the drug dealers who are part of some cartel conspiracy go out and sell to person A, B, C, and D, it doesn't matter that the cartel doesn't know the identities of the purchasers of those drugs. That's a conspiracy. Everyone understands that. And there's nothing in the law that requires a different understanding of conspiracy law when it comes to the joint action theory as articulated by Sal. I'm sorry for interrupting you. I know wanted to save time. Yes, Your Honor. Thank you. Counsel, I understand you're splitting time? Yes. Yes. All right. May it please the Court. Emmett Ong on behalf of President Biden. Your Honor, just picking up on the themes here, the appellant's primary argument is based entirely on two news articles. The at bottom, the complaint which draws from these two news articles essentially alleges that the government and Twitter engaged in a brief course of communications regarding their shared interest in addressing misinformation. This case, this court very recently in Doe v. Google case which was just- Can we take a look at those? Let's take a look at those articles. So let's start with the Reuters. It says, you know, the White House has been reaching out to Twitter about clamping down on COVID misinformation and getting their help to stop it from going viral. We are talking to them so they understand the importance of misinformation and disinformation, how they can get rid of it quickly. Companies have repeatedly vowed to get rid of such material. I mean, this is a motion to dismiss. We have to accept all factual allegations in the complaint as true. We have to construe the pleadings in the light most favorable to the non-moving party. Why isn't this enough? The agreements don't have to be overt. This is going to be a situation where there's rarely ever any direct evidence. It's always going to be circumstantial. Why isn't this enough to survive motion to dismiss? Your Honor, this court's prior cases make it clear that mere encouragement is not enough. And at most, that's what has been alleged here. In Zhao v. Breed, which is a case that the court handed down earlier this year, in fact, the court affirmed the dismissal of a case in which public officials criticized the billboard and even called for its removal. And the billboard company ended up taking it down. So that's one reason why mere encouragement is not enough. And it's certainly not enough for state action. It's not enough for a conspiracy. So if there are allegations that the company responded and took action as a result of that, that would be enough to survive a 12b-6? No, Your Honor. That would not be enough. This court has also, when it's looked at its – looking at its jurisprudence regarding conspiracy in a state action context, this court over and over again has emphasized the need for actual involvement by the government, which is not alleged here. Well, actual involvement in terms of engagement, right, regular communications, exerting pressure, leveraging the support of certain government agencies, laws, for example? That's correct, Your Honor. As the Supreme Court held in Walker v. Sons of Confederate Veterans, the government is entitled to favor certain views and disfavor other views. When the government speaks, it's allowed to take a position on a policy and to espouse views on certain viewpoints. And in that case specifically, it made a reference to vaccine programs. And so that is under constitutional control. But why isn't there reasonable inference, you know, wink, wink, nod, nod, we know what's going on here, get rid of it, clamp it down, stop it from going viral? Why isn't there enough of a reasonable inference of a conspiracy here? So the court should look back, should look past the labels and conclusions that are set forth in these articles and look to what's actually alleged in the complaint. In the complaint, drawing from the Reuters article, it states that the social media companies had already, quote, repeatedly vowed to get rid of such misinformation. So that means prior to the course of communications alleged in the complaint, the social media companies had already decided that they were going to address misinformation. Two, Twitter's terms of services and COVID-19 policies, as counsel has admitted, the government has played no role in formulating them, no role in how Twitter enforces them, and no role in what those penalties are. So that in and of itself strongly suggests, consistent with this court's longstanding decisions, that Twitter was exercising its private, independent judgment when it undertook its decision to suspend a penalty account. This was the first amended complaint, so there was, was this the second 12b-6 round? The, the... Or was there a voluntary amendment? ...move to dismiss the, the defendant's move to dismiss the complaint, then the appellant on her own accord amended the complaint. And so this is really the first amendment. But I would note for the court that, that appellant very specifically stated in her reply brief that she does not seek leave to amend. Okay. Thank you. You're over time. Thank you very much for your argument. Morning, Your Honor. Morning. Merrick Wolfe on behalf of Twitter. Ellie Chapman is here with me. We're from Perkins Coie. I would emphasize two things that, that are sort of close to what's already been discussed, but are standards from the cases that I think this case is a particularly good illustration of. The first is on plausibility and Iqbal. The, the, the way we understand that is, is there an obvious alternative explanation? Those are the Supreme Court's words. So here we have this pretty conclusory allegation of a conspiracy, and that this happened because of a conspiracy. Well, the obvious alternative explanation is that Twitter is following its and, and which, which they were taking down content because of those. It is not plausible that after the pandemic, after, you know, declarations of emergency in every single state, which has never happened before, after we were all shut down, after companies, including Twitter, had mandatory vaccinations of their employees, you know, this court was shut down for a long time. Like, it is not plausible that the reason Twitter took down this content that was in a conspiracy with the U.S. government to limit Ms. Huber's rights. That is not plausible. That fails under Iqbal, because the obvious alternative explanation is that Twitter was just enforcing its terms of service and also trying to- Can I ask you about the, the Unruh Act? I, I'm looking at the two California Supreme Court decisions. In Harris, it's pretty explicit as to what, what sort of categories are protected by the Unruh Act. And it says the categories involve personal as opposed to economic characteristics, a person's geographical origin, physical attributes, and personal beliefs. And then if I look at Marina Point, it says whether the exclusionary policy rests on the alleged undesirable propensities of those of a particular race, nationality, occupation, political affiliation, or age. In this context, the Unruh Act protects individuals from such arbitrary discrimination. That is very explicit language coming from the court of last resort of this state. So why wouldn't that be enough to have political affiliation and personal beliefs be, um, you know, be covered by the Unruh Act? I mean, there are several problems with the Unruh Act arguments here. And, and, I mean, there's really no, it would be a purely advisory opinion to get into any of that. There's no Unruh Act claim. And in fact, what cause of action it actually is, is open to question. There's, it's just First Amendment, Fifth Amendment, and that's it. So if, if plaintiffs wanted to raise rights under the Unruh Act, she needs to bring an Unruh Act claim. As to political affiliation, the comment in question that's in the complaint is that the Pfizer vaccine has 100 times more morbidity for teenagers than COVID itself and dozens times more for the elderly. Those are statements of fact. So I don't know how she could possibly get into the political affiliation bucket if she had brought an Unruh Act claim and she did not bring one. Finally, to the extent the Unruh Act claim tells Twitter that it has to host speech that it disagrees with and doesn't want to host, then the Unruh Act has to step aside for the First Amendment. And Twitter absolutely has those rights. I mean, Twitter wanted to be a, a social media platform that was only about the weather. They could do that because it's their platform and they get to decide what speech they want to host. And, and here, you know, this is, this is a relatively easy case because they said up front, we don't want misinformation about the efficacy of preventative treatments. That's what the, that's what the terms of service said. She made a statement about the efficacy of the Pfizer vaccine that is false and she was kicked off. So the obvious explanation here is that Twitter was following its terms of service. Let me just say on, on kind of what is the standard. The, the plaintiff argues as if, you know, you, if you can just show a meeting of the mind, some kind of agreement about policy that that's enough. That is nowhere close to enough. The touchstone standard from the Supreme Court is that at the end of the analysis, can you fairly say that this action was attributable to the government? And what's meant by that is that, that you fairly treat it as the government did this. That's the ultimate standard. So that, that Twitter and the government have the same views about Twitter or about COVID misinformation or something like that. That is nowhere close to saying that the reason Ms. Huber got kicked off was because the government did it. The government kicked her off. The, if, if Twitter gave the government like a portal where the government could just pick people to, to kick off of Twitter, okay, then we'd have a different case. But here, the obvious explanation is Twitter did this of their own judgment and is properly dismissed. Thank you very much, counsel. Thank you. I think there's a little bit of time left. You're muted, counsel. You're muted. Sir, we can't hear you. Thank you. My friends from the other side seem to want to play, and choose, which of the facts from the allegations of the complaint they're going to accept or disregard. May I ask you one question? You may. The Unruh Act says all persons within the jurisdiction of this state are free and equal, and then it goes on. What is your authority that Ms. Huber, who doesn't allege that she was ever in California, what, is your best authority that says the Unruh Act applies outside the state of California, extraterritorially? There's actually three, Your Honor. The first is the plain language of the statute. Dr. Colleen Huber agreed with Twitter that she would be bound by the jurisdiction of the state of California, and indeed she is. But a forum selection clause or a choice of terms of service actually provides that all litigation will take place in California. Right, but that's not jurisdiction, is it? It is when it is in the context that you cannot bring a lawsuit anywhere else. Moreover, what we have alleged in the complaint is that... The Unruh Act might just say you can't bring an Unruh Act claim if you are not a person within the jurisdiction of the state of California. Right, but additionally, Your Honor, the complaint alleges very clearly that Twitter in California made the decision to censor Dr. Colleen Huber's speech in California. That would provide jurisdiction over all of the issues, at least as far as I understand, in personal jurisdiction. All right, thank you, counsel. You're over time. Thank you, Your Honor. I appreciate your argument. I appreciate the arguments by all counsel. The matter is submitted. Thank you.
judges: NGUYEN, KOH, Bataillon